Phillips *v.* Town of Bloomington.

---

## PHILLIPS *et al. v.* TOWN OF BLOOMINGTON.

Where the requirements and conditions of a lease to keep a ferry have been violated by the lessee, a court of equity may declare the same to be forfeited.

Where the conditions of a lease require the lessee to establish and keep a good and sufficient steam ferry-boat, for the safe conveyance of passengers and their property, at all usual and reasonable times without delay, unavoidable accidents excepted; it was held, that testimony of frequent application of persons for passage across the river, and the refusal of the lessee for hours to notice them, and of the departure of such persons to other ferries, &c., is admissible to prove a forfeiture of the conditions of the lease. It was also held, that the lessee having green wood, and being moored on the opposite side of the river, afforded no excuse for such delay; that it was his duty, under the lease, to provide himself with the boat and the means of propelling, in order to ferry promptly from and to the Iowa shore; and it was also held to be admissible to prove the boat to be unseaworthy and unfit for the business, by an authorized surveyor of hulls, or by any competent witness, in order to show a failure to comply with the conditions of the lease.

The general assembly has the power to confer the exclusive privilege upon individuals or towns, to maintain and keep ferries on the Mississippi river.

IN EQUITY. *Appeal from Muscatine District Court.*

This was a bill in chancery, filed by " The President and Trustees of the Town of Bloomington," against John Phil-

lips and Francis J. Clark, to vacate a ferry lease, and enjoin the lessees from the franchise. The relief sought, and the proceedings in the case, are sufficiently set forth in the opinion of the court. The cause came up in the court below on the bill, the answer of Phillips, exhibits and depositions. Decree for the complainants ; the lease declared forfeited, and John Phillips forever enjoined from all control, management, and interest in the ferry.

*Stephen Whicher*, for the appellant.

*William G. Woodward*, for the town of Bloomington.

*Opinion by* HASTINGS, C. J. ' By an act of the legislature of the territory of Iowa, approved December 29th, A. D. 1840, entitled, an act to amend an act entitled an act to incorporate the town of Bloomington, the complainants and their successors in office were authorized to establish and keep a ferry across the Mississippi river at Bloomington, in Muscatine county, and for one mile above and one mile below said town, to the east bank of said river, and were authorized to lease the said ferry for any term of years not exceeding ten years. In the year 1841, it appears that the complainants leased the ferry to one Francis J. Clark, one of the defendants, in which lease it was among other things provided that the said Clark should, on or before the first day of April then next, or as soon thereafter as the state of said river would allow, establish, and from thence afterward, during the said term of ten years, continue established and keep a good and sufficient steam ferry-boat at the place aforesaid, for the safe conveyance of passengers and their property across the said river, at all usual and reasonable times, without delay ; unavoidable accidents, &c., excepted.

It appears that the said defendant, Clark, assigned the lease to John Phillips, whose misuse of the privileges granted, and failure to comply with the terms of the lease, are the grievances complained of in the bill.

The right of a court of equity to cancel such a lease, for a failure to comply with its terms, we think, cannot be reasonably doubted. And the first question presented is, whether there has been a failure, on the part of the lessees, to substantially comply with the requisitions of the lease.

The testimony of several witnesses clearly shows, we think, an unquestionable delay on the part of Phillips, in the transportation of persons and their property, if not, in some instances, an absolute refusal.

Such is the testimony of Thomson and Fry, whose local position gave them an opportunity to know of such delays, the one keeping a wharf-boat at the ferry landing, and the other a tavern near the same; and testimony of other witnesses tends to show instances of delay. An objection is urged to the legality of the testimony of Thomson, Fry, and others, because the names of the persons desiring to cross were not given, and that their testimony is but hearsay evidence.

The witnesses do not testify to the declarations of third persons, except the declarations made at the time, and as a part of the application of such persons to cross the river. It is unquestionably competent for a witness to state the facts which may have come under his cognizance, such as the frequent application of persons for passage across the river, and the refusal of the defendant for hours to notice such applications, and the departure of such persons for other ferries.

The defendants, we think, have not succeeded in rebutting the testimony above referred to. Because several persons never witnessed the delays testified to by complainant's witnesses, raises no presumption against the facts to which they testify. The fact that defendant's wood was green, and that his boat was moored on the Illinois shore, is no excuse for delays in ferrying from the Iowa shore.

It was his duty to ferry from and to this shore promptly and without delay, and to provide himself with a boat and the means of propelling her, to enable him to do so. The franchise was granted by the Iowa authorities, and created within their jurisdiction.

The evidence of Hedges is objected to, on the ground that the inspection of the ferry-boat was not in the port of St. Louis, nor was she a boat coming within the port jurisdiction of St. Louis. It is unnecessary to examine the act of Congress requiring an inspection of boats and vessels propelled by steam, as we think it immaterial whether the boat was proved unseaworthy by an officer of the government, or by any other competent witnesses.

The testimony of Hedges shows that the boat was unfit for the purposes of ferrying persons and their property, and then required extensive repairs, and the defendants have not proved that the boat was repaired; therefore, from this testimony, we are forced to the conclusion that the terms of the lease were violated.

A question is here raised as to the right of the legislature to confer upon an individual an exclusive privilege to keep a ferry across the Mississippi river, for the reason that this river, by the ordinance of 1787, was declared to be forever free, and a public highway. This question has been so often settled by the courts of Ohio, Kentucky, and Illinois, and by the supreme court of the territory of Iowa, that it would seem to be unnecessary for this court to enter into any lengthy discussion in favor of this right. But the question having been raised, we will reiterate what we believe to be the uniform current of decisions, when and wherever it has been raised in judicial tribunals.

The demands of public convenience, in the transportation of persons and their property over the country, by erecting the various highways, bridges, and ferries, it will be conceded, will subject to the public easement private property, upon just and adequate compensation. It is not in the power of the citizen to resist the demands of the public accommodation. The rights of the public are sovereign, and are only limited by the constitution requiring compensation, in all cases where private property is appropriated to public uses. In the case of *United States, ex re. Geo. W. Jones* v. *Fanning*, Mason, Chief Justice, in delivering the opinion of the court, says,

"The right to construct a road, includes the power to provide for overcoming all obstacles in its course, as well those presented by a river, as by any other object. A ferry, properly so called, is merely the continuance of a road across a river. It is only a substitute for a bridge." Morris, 351. A ferry does not obstruct the navigation of the river; if it did, it would be clearly illegal.

In the case of *Mills* v. *The County of St. Clair*, 2 Gilman, 225, a case which was very elaborately argued, the court say: "That the legislatures of the several states possess the power within their limits, to establish and regulate ferries, is a principle which at this day cannot be successfully controverted, and that that power is sufficiently extensive, to authorize a grant for the construction of such ferry from the Illinois shore, on the waters of the Mississippi, in the manner prescribed by the act of the 2d of March, 1819, we do not entertain a doubt."

The grant of a ferry franchise necessarily implies a right to exercise exclusive privileges within prescribed limits and upon certain conditions; and a *ferry*, as ordinarily and legally understood, cannot exist without the property of exclusion of others in the exercise of the rights granted. In the case just referred to, the court upon the question say: "This principle is so well established that no authority need here be cited in its confirmation. Of all the numerous cases to which reference has been made upon the argument, not one has been produced which in any respect was counter to it."

In the case of *Francis B. Fay, et al., Petitioners, &c.* 15 Pick. 253, the court say: "The right to a ferry does not at all depend upon the right to or property in the waters over which it passes. The franchise of a ferry does not confer or enlarge, take away or impair, the right of navigation. It is a franchise conferring certain privileges and imposing certain duties, not affecting the right of navigation, but presupposing its existence." This case in Massachusetts is a similar case to the present, and involving many

similar questions, and the court further say, "Ferries are as necessary over navigable waters . as others, if the public accommodation requires them."

The legislature have conferred upon the corporate authorities of the town of Bloomington the right to establish and maintain a ferry opposite the town, making them the judges of the demands and wants of the public; and it appears that these authorities, to induce the defendants to establish a ferry, and afford a prompt and easy mode of transportation across the river, for a mere nominal consideration conferred upon the defendants an important trust, which has been abused, and the public interests disregarded.

The case of *Gibbons* v. *Ogden*, referred to by defendant's counsel, clearly asserts the right of the states to legislate on the subject of ferries, turnpike roads, inspection laws, quarantine laws, and health laws of every description, and does not conflict with the views we have expressed.

The decision therefore of the court below, cancelling the lease and decreeing a perpetual injunction against the defendant's use and enjoyment of the franchise granted thereby, is affirmed.